### Chas. E. Brown et al. v. S. H. Watson.
#### No. 2504.

1.  **Selling on Commission—Partnership.**—A person paid for services rendered to a firm by a share of the profits, if this be given him only as compensation for services and he has no interest in the principal and no other interest in the profits, is not liable as partner; nor would the person furnishing the goods to be so sold on commission thereby be made a partner with the agent selling and receiving in compensation a given proportion of the sales.

2.  **Declarations by Partner.**—The declarations of one of several persons contemplating the formation of a partnership, made without the knowledge or consent of the other or others, that such partnership had been formed will not bind such others. They are not estopped from proving the non-existence of such partnership.

3.  **Same—Commercial Agencies.**—The unauthorized reports made by one person that another is his partner, without the knowledge or consent of such other, can not bind the party not participating in such communications.

4.  **Letter Heads, Advertisements, etc.**—That a line of goods is given special notice in the advertisements and correspondence of a firm does not conclude the owner furnishing such goods to be sold on commission from asserting ownership as against the creditors of the firm engaged in selling such goods on commission; said correspondence, etc., showing that they are agents as well as dealers, etc.

5.  **Manufacturers' Agents.**—That a purchaser intervened between the manufacturer and the agent for sale would not alter the relationship between the factor and the goods so received for sale.   Nor would the term "manufacturers' agents" be deceptive when used by such factor handling such goods.

6.  **Holding out as Partner.**—Where there are circumstances requiring explanation in the dealings of parties together in an apparent common enterprise and such explanation is given by the party compromised by the circumstances, such explanation if followed by the trial court will be allowed on appeal.   It is a question of fact.

Appeal from Ellis. Tried below before Hon. Anson Rainey.

There is no question upon the pleadings. The conclusions of fact found by the court are as follows:

"1. C. N. Ousley & Co. being indebted to plaintiffs, writs of attachment were sued out and same levied on the property in controversy, which was claimed by the defendant, Watson.

"2. The said firm of C. N. Ousley & Co. was composed of C. N. and W. H. Ousley, and did business from November, 1885, until November, 1886, in Waxahachie, Texas, as manufacturers' agents and dealers in agricultural implements. Sixty per cent of said business was done as agents and forty per cent was done as dealers.

"3. In the latter part of November, 1885, C. N. Ousley and S. H. Watson endeavored to form a partnership by which W. H. Ousley was to retire from said firm of C. N. Ousley & Co. and S. H. Watson was to take his place in said firm, but such partnership was never consummated.

"4. About the time such negotiations were pending between Ousley and Watson a local notice was published in two of the weekly papers in Waxahachie, to-wit, the *Enterprise* and the *Telegraph,* where said firm was doing business, at whose instance was not shown, stating that S. H. Watson had become a member of the firm of C. N. Ousley & Co. At the time of the publication of said notice Watson was not in town. When he returned home he heard of such publication and became impressed that the publication had been made in the *Mirror,* a weekly newspaper published in Waxahachie; he went to the editor of the *Mirror* and asked him to correct the statement that he was a member of the firm of C. N. Ousley & Co., but such correction was never made.

"5. During the time Ousley and Watson were negotiating as to forming a copartnership, C. N. Ousley believing that an agreement of partnership had been reached, informed Bradstreet's Commercial Agency that Watson had become a member of the firm of C. N. Ousley & Co. About same time the local reporter of R. G. Dun & Co.'s agency informed said agency that Watson was a member of the firm of C. N. Ousley & Co. Watson knew nothing of said reports being made to said agencies.

"6. The firm of C. N. Ousley & Co., from its inception in 1885 to the — day of February, 1886, dealt as owners in what was known as *Red Jacket pumps.* On last named date Ousley & Co. closed out the pumps to the Red Jacket Pump Company and S. H. Watson bought from said pump company the exclusive right to vend said pumps in the State of Texas; and a contract was made between Watson and Ousley & Co. by which Watson was to furnish the said Red Jacket pumps and Ousley & Co. were to sell same and be at all expense in selling, and to receive a part of the profits of sale, 33⅓ per cent wholesale, and 50 per cent retail. This contract continued in force till the failure of Ousley & Co.

"7. Ousley & Co. carried on the business as dealers and as agents at

the same stand and in the same building; said firm advertised as dealers and as manufacturers' agents, and advertised 'pumps a specialty.'

" 8.    R. G. Dun & Co. reported to W. G. Ellis, one of the plaintiffs, that Watson was a member of the firm of C. N. Ousley & Co., and said Ellis sold goods to said firm on the faith of said report.

" 9.    Both the Dun and Bradstreet agencies reported to Wm. Deering & Co. that said Watson was a member of the firm of C. N. Ousley & Co., and said Deering & Co. sold goods to Ousley & Co. on the faith of said reports."

As conclusions of law the court found:

" 1.    There was no contract of partnership between Ousley and Watson.

" 2.    The conduct and acts of Watson were not such as to make him liable as a partner of Ousley.

" 3.    The property in controversy is not subject to plaintiff's debts."

Judgment accordingly was rendered for Watson, and the plaintiffs in attachment appealed.

*Lancaster & Maxwell* and *G. C. Groce*, for appellants. — 1. Whether a partnership exists between two or more individuals as to third persons does not depend upon the intention of such individuals as between themselves, but upon the actual relation of the parties consequent upon their engagements, and if these show such a community of property, business, or profits as constitutes a partnership, it is a partnership as to creditors though the parties did not so intend and actually intended the contrary.    Cothran v. Marmaduke, 60 Texas, 370; Stevens & Anderson v. Gainesville National Bank, 62 Texas, 503; Cleveland et al. v. Anderson, 2 App. Civ. Cases, secs. 146–8; Pars. Part., * pp. 54, 87; Manhattan Brass & Mfg. Co. v. Sears, 45 N. Y., 797 (6 Am. Rep., 177); Park v. Canfield, 37 Conn., 260 (9 Am. Rep., 317).

2.    An agreement between two or more persons that one shall furnish the capital or property to be used in a commercial venture, and that the others shall carry on the venture in their own names and bear all the expenses of the business, and that there shall be a division of the profits of the venture between all, creates a contract of partnership between all the contracting parties as to third persons, creditors of those in whose names the venture is carried on.    Cothran v. Marmaduke, 60 Texas, 370; Miller v. Marx & Kempner, 65 Texas, 131; Cleveland et al. v. Anderson, 2 App. Civ. Cases, secs. 147–8; Rosenfield v. Haight, 53 Wis., 260 (40 Am. Rep., 770); Leggett v. Hyde, 58 N. Y., 272 (17 Am. Rep., 244); Manhattan Brass & Mfg. Co. v. Sears, 45 N. Y., 797 (6 Am. Rep., 177); Park v. Canfield, 37 Conn., 250 (9 Am. Rep., 317); Pars. Part., * pp. 54, 87.

3.    A secret partner in a partnership, when discovered, is as much bound for the liabilities of the firm as those in whose names the business is carried on.    Pars. on Part., *p. 31–62.

4.　One who is a secret partner in a firm for part of its business which is carried on in the same name and same manner by the same persons and at the same place with other business of such firm, without difference or distinction between the different branches of business, in so far as the general public and creditors of the parties in whose name the business is carried on are concerned is in law as to such creditors a partner in the whole business and is estopped from claiming any of the property used in such business as against such creditors. Pars. Part., pp. 133, *121, 3d ed., and Swan v. Steele, 7 East, 210, cited in note.

5.　One who knowingly permits his own property to be used and dealt with by a commercial firm as their own and in such manner as would reasonably induce creditors of such firm to believe it the property of the firm and to grant credit to the firm on the faith of its ownership of such property is estopped from claiming such property as against creditors of such firm. Bigelow on Estoppel, 433, 434; McNeal v. Tenth Nat. Bank, 46 N. Y., 325; Horne v. Cole, 51 N. H., 287.

*M. B. Templeton* and *J. W. Ferris,* for appellee. —1. The contract by Watson with Ousley & Co., by which they were to store, insure, and sell the pumps on commission, did not constitute Watson a partner in the business of Ousley & Co.　Buzard v. Jolley, 6 S. W. Rep., 422; Buzard v. Bank of Greenville, 67 Texas, 83; Mo. Pac. Ry. v. Johnson, 7 S. W. Rep., 838, with long line of cases cited in note; Parchen v. Anderson, 51 Am. Rep., 65, decided in 1885, reviewing all conflicting authorities in England and America; 5 Mont., 438; Boston and Colorado Smelting Co. v. Smith (1880), 43 Am. Rep., 3—an elaborate and leading case; 13 R. I. 27; Wheeler v. Farmer, 38 California, 203; 1 Lindley on Part. (Ervell), *p. 39; 95 U. S. (5 Otto), 289.

2.　The appellee Watson did not hold himself out as a partner, nor did he render himself liable as a partner by reason of acts or conduct on his part.

3.　It is not admitted nor was it proved that Watson ever was a secret partner in the firm of C. N. Ousley & Co.

Appellee further submits the following independent propositions:

1.　The liability of a party sought to be held liable by third parties as a partner must be determined by one of two modes, viz., a partnership *inter se,* or if not that by estoppel.　Parchen v. Anderson, 51 Am. Rep., 80.

2.　The fact that appellee once *contemplated* a partnership with C. N. Ousley & Co. is not sufficient to hold him liable.　The contemplated partnership having been abandoned, the record not only fails to prove a partnership, but proves the contrary; hence there could be no partnership *inter se.*　Lindley on Part. (Ervell), *pp. 52 and 53.

3.　For appellee to be held liable as a partner by the doctrine of estoppel to the creditors of C. N. Ousley & Co., he must have held himself

out to them as a partner or others must have so held him out with his knowledge or consent. Buzard v. Jolley, 6 S. W. Rep., 422.

4. To furnish goods on consignment, the compensation of the consignee to be a per cent of the profits over first cost, does not make the consignor and consignee partners. Buzard v. Bank of Greenville, 67 Texas, 83.

5. The property in controversy described in appellee's claim bond can only be held subject to appellants' writs of attachment upon one theory, viz., that appellee S. H. Watson was an *actual* partner in the firm of C. N. Ousley & Co. and that the title and ownership in and to said property was vested in said partnership at the time of the levy.

6. If appellee S. H. Watson was only liable to the creditors of C. N. Ousley & Co. as a partner by virtue of the doctrine of estoppel (which, however, we deny), this would not subject his property to the levy of writs of attachment against parties other than himself; such a liability would be a personal one but not one *in rem*.

7. Whether the above proposition is true or not, if there was no partnership *inter se* nor a "holding out" as such by Watson or by his permission, then appellee can in no event be held liable, neither can his property be held liable. Upon both of these issues the trial judge found for appellee, and we maintain that the finding is correct and should not be disturbed by this court.

WALKER, ASSOCIATE JUSTICE.—The findings of facts by the trial judge will be taken as conclusive where there is any material conflict in the testimony. This will reduce the labor of this court to the application of the recognized principles of the law of partnership to the undisputed facts or the facts found by the court showing the dealings of Watson and the firm of C. N. Ousley & Co. with each other and the public.

The written contract by which Watson agreed to furnish C. N. Ousley & Co. on consignment such a stock of pumps, etc., as the two parties might mutually agree to be necessary and sufficient, and in which Ousley & Co. agreed to store, insure, and sell the pumps, etc., and keep correct account of said business, further stipulates " commissions of one-half profit on retail sales and one-third profit on wholesale sales are to be compensation to said C. N. Ousley & Co. * * * for their services in storing and selling said pumps," etc.

Such a contract for the payment of Ousley & Co. for their services does not of itself make them partners with Watson. "It must be, however, considered as now settled that a person paid for services rendered to a firm by a share of the profits, if this be given him only as compensation for services and he has no interest in the principal and no other interest in the profits, is not liable as a partner." Parsons on Part., 92

(also note and citations under p. 71); Story on Part., sec. 36; Parchen v. Anderson, 51 Am. Rep., 65; 38 Cal., 203, Wheeler v. Farmer.

While courts will not make contracts but only enforce them as made, still it is not permitted to parties acting together as partners to avoid responsibility for their acts by stipulating among themselves that they are not partners nor to be held as such to persons dealing with them; that is, partners in fact can not stipulate otherwise so as to affect others innocently dealing with them.

Appellants insist that Watson is estopped by his acts from denying the alleged partnership regardless of what his contract relations may have been with Ousley & Co., and that by permitting them to have the possession with unlimited control of the property it became a basis of credit for the firm, and that by his relations to the business and acts in connection therewith he sanctioned the holding out of the partnership with him by C. N. Ousley, and that the creditors acted upon these representations and acts.

The legal effect of the acts of persons in business together as affecting the question of partnership has been a subject of discussion in numerous cases in our courts.

In the cases 48 Texas, 225, Brinkley v. Harkins, and 60 Texas, 372, Cothran v. Marmaduke, the party furnishing the money or the capital for the business on contract to receive on settlement the capital and share of profits, was held to be a partner for the reason that he received profits as principal not as agent, or rather because the circumstances evidenced a partnership in fact.

In the cases Buzard v. Jolley, 6 S. W. Rep., 422, and Buzard v. Bank of Greenville, 67 Texas, 83, Buzard furnished the capital; Pennington was to invest it in cattle and to have share of the profits in the enterprise. While conducting the business Pennington held out Buzard as partner and the partnership was generally believed to exist by those dealing with Pennington. It was held that neither the division of the profits nor the declarations and acts of Pennington affected Buzard when denying he was a partner, it not appearing that Buzard knew of Pennington's manner of dealing in the business.

In Goode v. McCartney, 10 Texas, 195, and Stevens v. Gainesville National Bank, 52 Texas, 503, it was recognized that a community of profits was evidence of partnership in favor of creditors dealing with them. In neither case, however, was it held to be conclusive. Each recognized that an agent did not become partner by receiving compensation for his services in an agreed share of the profits.

The cases Harris v. Cravy, 67 Texas, 384, and Grabenheimer v. Rindskoff, 64 Texas, 52, were where a clerk was held out as the member of the firm and permitted to do so by principal.

From these cases it is evident that the liability of the parties as mem-

bers of a partnership is determined by the entire facts of each case, and that creditors are protected against private agreements inconsistent with the legal effect to be given to the dealings together of parties in a common business. That there is a common interest is generally presumed from a sharing of profits.

There is some confusion of ideas in the use of the term "community of profits" in this case. In the general business of C. N. Ousley & Co. aside from the "pump" business Watson did not have any interest whatever save as a creditor for money loaned to the firm and in no way connected with this litigation. In the "pump" business there was a division of the profit on sales but no joint or common interest in the stock. Until sold it was Watson's. Ousley & Co. received compensation out of profits at which sales were made in lieu of or as commission; as factors or agents to sell and not as merchants. This distinction between acquiring an interest in accumulated profits and receiving compensation from a stipulated part for services is well recognized, and this dealing would not make them partners even in this business. 10 Texas, 195. If the transactions did not make Ousley & Co. partners with Watson, it is idle to say that they made Watson partner with Ousley & Co. If the fact that Ousley & Co. received compensation for storing and selling the pumps out of profits did not constitute them partners in that business, for a stronger reason would it be insufficient to constitute the partnership in other business.

In the general business of Ousley & Co. Watson was not a participant. There was no sharing of profits nor common interest in the capital. Watson put nothing into it and had no claim or right to take anything out. No agency by Watson to Ousley & Co. existed or was exercised to incur debts upon the stock of pumps, and certainly none with reference to the other business in which Watson had no interest.

The circulars and letter heads used indicated that Ousley & Co. were agents and factors. The credits extended by the plaintiffs in this suit were upon reports from the commercial agencies, and not so far as shown in the record upon the show of stock on hand increased by the consignment of Watson's property. The existence of the reports to and by the the commercial agencies were unknown to Watson.

The undisputed facts show that in the latter part of November, 1885, negotiations began between Watson and C. N. Ousley looking to a general partnership between them. These were never perfected. A special partnership was discussed and the subject dropped. While these negotiations were pending a local notice of a partnership between them appeared in two newspapers of the town where the business was carried on, of which Watson was ignorant. The negotiations were pending from one to two weeks.

February 16, 1886, Watson having acquired the right to sell the Red

Jacket pump for the State, and having purchased of the manufacturer the stock of pumps and fixtures in the hands of Ousley & Co., contracted with them that he would furnish the pumps, etc., buying them, to Ousley & Co., they agreeing to store, insure, and sell upon agreed compensation for their services in so doing, as before stated.

The business thereafter was carried on without any apparent change but in accordance with the contract as to the pump business. Accounts were kept in separate books from the general business. The pumps were advertised by circulars, on the letter heads, and otherwise. It was profitable. From these *facts* we do not find an actual partnership to have existed between Watson and C. N. Ousley & Co.

As to the equitable estoppel insisted upon the facts will be further tested. The use made of Watson's property was simply storing it, insuring it for and in Watson's name, work to effect sales, and in selling. This was carried on in the same building and by the same clerical force as was the general business. The circulars and letter heads disclosed that the firm of C. N. Ousley & Co. were "manufacturers' agents and dealers in farm, gin, and mill machinery, buggies and wagons. Pumps a specialty." That pumps were a specialty did not indicate whether they were handled as agents or as dealers, if there be any difference between the terms. This would put upon inquiry any one interested to the extent of the agency in the business. It is thought that no material difference would exist as to the agency for the pumps from the interposition of Watson between the manufacturer and the firm. The goods came to the firm with the same limited control—power to sell. While shipped direct to Ousley & Co. the goods were invoiced to and paid by Watson, and when received were subject to the contract by which they were to be sold.

The negotiations looking to the formation of a partnership, general and special, fell short of a contract. There were no actual dealings whatever between them in business prior to February 16, 1886, when the investment in the pump business was made by Watson. The declarations and representations of C. N. Ousley with reference to the connection of Watson with the Ousleys and prior to such purchase were not declarations of a partner and could not bind Watson. They would be harmless against him whether made in newspaper locals, in letters to commercial agencies, or in declarations to commercial agents. Watson testified that all these publications, reports, and letters were unknown to him.

Had Watson known of these reports being circulated of his connection with the Ousleys it would have been his duty to correct them. He did hear of a newspaper article connecting him with the firm, but with the information was the impression that it was in another newspaper. He promptly requested the editor and publisher of the newspaper to make the correction. He never heard of the publication in the others before this litigation.

Whether Watson used proper care or was negligent in his transactions with the Ousleys to such an extent as to deceive the creditors of the firm was itself a question of fact for the court upon the trial. The judgment below necessarily was based to a great degree upon Watson's testimony. If Watson was believed the court was justified in finding for him. We do not find that Watson held himself out or permitted himself to be held out as a partner so as to bind him. He was not estopped from showing the truth as to his ownership of the pumps.

The property in controversy was not subject to attachment at suit of the creditors of C. N. Ousley & Co. upon the facts in the record.

The judgment below is affirmed.

*Affirmed.*

Opinion December 7, 1888.