KASCH et al. v. COMMISSIONER OF INTERNAL REVENUE.

No. 6821.

Circuit Court of Appeals, Fifth Circuit.

Feb. 18, 1933.

Rehearing Denied April 4, 1933.

R. E. McKie, of San Marcos, Tex., for petitioners.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and Norman D. Keller, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Coun-

sel, Bureau of Internal Revenue, and Harold Allen, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before BRYAN, HUTCHESON, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

The Board of Tax Appeals approved deficiencies in income tax for the fiscal year ended May 31, 1925, assessed against the petitioners, Ed Kasch and his wife Theodora Kasch. The assessment of the deficiencies resulted from the conclusion that the gross income of each of the petitioners as reported should be increased by an amount which the petitioners claimed was income of Milton Kasch as a member of a partnership composed of the petitioners and said Milton Kasch. The claim that such partnership existed was rejected by the Board of Tax Appeals, which determined that the amount which petitioners contended was income of Milton Kasch belonged to the petitioners as community income.

Prior to the time of Ed Kasch, his wife, Theodora Kasch, and Milton Kasch, the son of Ed Kasch by a former wife, entering into an agreement hereinafter mentioned, Ed Kasch, who lived at San Marcos, Tex., was the sole owner of a cotton-seed selling business which was conducted under his name. At various times during the period of about six months ending May 31, 1924, Ed Kasch and his wife had oral conversations with Milton Kasch in regard to the latter being taken into the business as a partner, and during that time the three orally agreed to form a partnership on the basis of their sharing equally the profits and losses of the business, that nothing be withdrawn from the business, and that Milton Kasch devote his time and attention to the business except when he was attending school. At that time Milton was sixteen years old. From the time that agreement was entered into Milton devoted all his time and attention to the seed business, except when he was attending school. For the period of the school vacation in 1924, he was paid a salary of $75 per month, and was given a small allowance while attending school. The books kept for the seed business during the fiscal year ended May 31, 1925, showed a profit from the business of $124,808.94. By an entry in the journal that entire profit was credited to Ed Kasch; the entry being accompanied by the statement: "To close net profits for year into proprietorship account." By later entries

Ed Kash proprietorship account was charged with two-thirds of the $124,808.94, or $83,205.96, and credits were entered in favor of Theodora Kasch and Milton Kasch, each in the sum of $41,602.98, accompanied by the statement: "To set up partnership accounts for Mrs. Theodora Kasch and Milton Kasch, as they were taken in as partners May 31, 1924, to share in profits of business. This entry to distribute profits equally among them, as per profit and loss statement, and income tax return May 31, 1925." In May, 1930, a corporation was organized under the name "Ed Kasch, Inc." and took over the business. $16,600 of the $50,000 capital stock of that corporation was subscribed for and issued in the name of Milton Kasch; the certificate for which remained in the possession of Ed Kasch. A written instrument, dated September 27, 1930, and acknowledged before a notary public on November 15, 1930, was executed by Ed Kasch and Milton Kasch; the latter then being twenty-three years old and married. That instrument, after reciting that during the life of the partnership from June 1, 1924, to June 1, 1930, the net earnings to which Milton Kasch became entitled under the agreement between him and his father amounted to $83,378.46, and that of that amount Milton Kasch had withdrawn and expended $3,460, provided that the balance, $79,918.46, should constitute a trust fund, to remain in the possession and control of Ed Kasch as trustee, with power to handle, control, and invest the sum, including principal and income, in such manner as he may deem best, until Milton Kasch should reach the age of forty years; that if Milton should die prior to the termination of the trust leaving a child or children surviving, the trust should enure to the benefit of the surviving child or children, and should continue for them until Milton would have reached the age of forty years had he lived, and that if Milton should die without issue during the life of the trust, then the father was to pay the surviving wife the sum of $1,000 a year for ten years, and the remainder should revert to the father. It appeared from recitals contained in that instrument that part of the fund covered by the agreement previously had been invested by Ed Kasch in land, the title to which was taken in his own name. So far as appeared, Theodora Kasch never made the application provided for by statute (Rev. St. Tex. 1925, art. 4626) for the removal of her disabilities of coverture, and that she be declared a femme sole for mercantile and trading purposes.

For two or more persons to be partners they must expressly or impliedly agree to be associated in a relationship which has the legal effect of making them partners. White v. McNeil (Tex. Civ. App.) 294 S. W. 928; 20 R. C. L. 802. Under the Texas law, a married woman cannot be a partner in a mercantile business, unless her disabilities of coverture are removed by compliance with a statutory requirement. Purdom v. Boyd, 82 Tex. 130, 17 S. W. 606; Miller v. Marx & Kempner, 65 Tex. 131; Rev. St. Tex. 1925, art. 4626. The only evidence as to an agreement on the subject of a partnership was as to an oral agreement between Ed Kasch, his wife, and Milton Kasch, with reference to a partnership of which each of the three was to be a member. It seems that such a partnership did not come into existence because of the incapacity of the wife to become a partner. No evidence indicated that prior to or during the year beginning June 1, 1924, either Ed Kasch or Milton Kasch consented to a partnership of which no one but themselves was a member. But, without determining whether the just mentioned circumstance did or did not keep the oral agreement from having the effect of creating a partnership of which Milton was a member, we are of opinion that the evidence adduced disclosed another ground supporting the conclusion that during the taxable year in question Milton's relation to the seed business was not such as to make him a partner, having a right to a share of the profits. One is not a member of a business partnership unless he has a proprietary interest in the profits as profits. Sugg v. Hopkins (C. C. A.) 11 F.(2d) 517. In determining whether the parties to the oral agreement did or did not intend Milton Kasch to be the real owner during the taxable year in question of a third or other fractional share of the profits of the business, the terms of the agreement, and also attending circumstances, and what parties to the agreement did with reference to the profits, are to be considered. Southern Surety Co. v. Texas Employers' Ins. Ass'n (Tex. Civ. App.) 2 S.W.(2d) 310; Brown v. Watson, 72 Tex. 216, 221, 10 S. W. 395. By the terms of the agreement Milton was to have no right to withdraw the whole or any part of the share of the profits which nominally was to be his. No provision was made for his ever having the right to withdraw any of the profits. When the oral agreement was made Ed Kasch was the sole owner of the business and had control of its profits. What was done after the agreement was entered into indicated that a relinquishment of his control of any part of the profits was not intended by the family arrangement. In the conduct of the business, as disclosed by its books of account, the profits continued to be treated as his, the entire profits for the year in question being credited to him; the share credited to Milton being shown to come, not directly from the business, but from his father. While Milton did not have or exercise any right to withdraw profits credited to him, his father withdrew profits credited to Milton and invested them in land, the title to which was taken in his own name. Nothing indicated that his doing so was not in accordance with what all parties to the oral agreement intended from the beginning. When the seed business was taken over by a corporation in 1930, Milton then being of full age and married, there was no distribution of profits in which he shared, and, so far as appears, his right to treat as his own any part of the profits was not asserted or recognized. The father's control and domination of the profits nominally credited to the son were continued by an arrangement which could not be changed without the father's consent. It appeared that from the time the oral agreement was made, and with the consent or acquiescence of Milton after he became of full age, Ed Kasch continued to have such control of the profits nominally credited to Milton as was inconsistent with the latter being the real owner or proprietor of them. Evidence adduced fairly tended to prove that the oral agreement relied on did not have, and was not intended to have, the effect of making Milton Kasch the real owner or proprietor of a share of the profits of the seed business carried on in his father's name. The conclusion that the alleged partnership did not exist, being supported by evidence, is not subject to be set aside. It follows that the above-mentioned ruling was not erroneous.

The petition is denied.