KING et al. v. MATNEY.

No. 6312.

Court of Civil Appeals of Texas. Amarillo.

June 1, 1953.

Rehearing Denied June 29, 1953.

Adkins, Folley, Adkins, McConnell & Hankins, Amarillo, for appellants.

Simpson, Clayton & Fullingim, Amarillo, for appellee.

PITTS, Chief Justice.

This is an appeal from a judgment holding a partnership contract executed by a married woman to be valid, although her disabilities of coverture had not been removed as provided for by law. This suit was originally filed by appellant, Garland H. Morris, joined by her husband E. L. Morris, against appellee, V. Lee Matney. Mrs. Morris was on October 30, 1950, divorced from E. L. Morris and later married A. P. King, who, by order of the court, was then added as a party plaintiff as the husband of appellant after dropping the name of E. L. Morris, her former husband, as a party plaintiff, thus changing the name of the original plaintiff from Garland H. Morris to Garland H. King, who will be hereafter referred to as appellant.

The suit arose as a result of a written contract dated and executed on June 10, 1948, wherein appellant, joined by E. L. Morris, who was then her husband, entered into the contract with appellee, V. Lee Matney, to form a trading partnership for the purpose of buying, selling and raising cattle under the name of "Tule Cattle Company". The contract stipulated that appellant and appellee would each on the date of the contract pay into the company the sum of $25,000 as a capital fund and that appellant would advance an additional sum of $50,000 as a loan to be used as an operating fund. It was further therein stipulated that the $50,000 advancement made as a loan to the company by appellant would "be repaid at the termination of the operating agreement, but without interest", and that additional operating funds may be later borrowed by the company. Later in 1948 appellee transferred from another account the sum of $27,896.88 of appellant's separate funds into the operating funds of the company as a loan to the partnership. All of the funds advanced by appellant as loans to the company and used by the partnership was appellant's individual money and separate estate. The terms of the contract likewise made appellee treasurer of the company and gave him authority to manage the company operations.

The case went to trial before the court without a jury upon two separate counts of appellant's amended petition, alleging first that she was a married woman when she entered into the partnership contract of date June 10, 1948, and by reason of her coverture, she lacked authority and power to become a party in the trading partnership and that by reason of the investments of the sums of $75,000 and $27,896.88 of her separate money and estate in the Tule Cattle Company she became a creditor of the company to the extent of her total investments, for which amount she sought judgment.

In her second count pleaded alternatively her investments previously herein stated were again pleaded and she sought an accounting and a dissolution of the partnership, pleading among other allegations, in effect, that appellee had opened an account at the bank and set up the company books in the name of "V. Lee Matney Special" contrary to the terms of the contract which required such to be done in the name of "Tule Cattle Company", and that later on December 31, 1948, a change was made by appellee transferring the account to Tule Cattle Company but such was done by appellee partly in bad faith when he then wrongfully charged individual losses sustained by himself to the partnership. Appellee joined issues with appellant on both counts. As a result of the trial appellant was denied any relief on either count. Judgment was rendered awarding an equal division between appellant and appellee, the sum of $5,757.90 representing the remaining proceeds of Tule Cattle Company, from which judgment an appeal was perfected.

At the request of appellant, the trial court filed findings of fact and conclusions of law and thereafter further findings and conclusions were likewise filed at the request of appellant, all of which are consistent with the judgment rendered. In effect, the trial court found in part that the contract was voidable at the election of appellant and that she, between the time of her divorce from Morris and her marriage to King and while she was a single woman, elected

608

to affirm and ratify the original contract by originally then filing this suit, alleging a partnership and seeking an accounting, pleading then in substance as she pleaded here in her second count of her amended pleading previously herein mentioned. For these reasons the trial court concluded that appellant was bound by the terms of the original contract and that she was not entitled to recover under the pleadings and facts presented.

Appellant attacks the judgment and some of the findings of the trial court with seven assignments or points of error presented. She charges that the trial court erred in its failure and refusal to sustain her claims made in her first count pleaded concerning her marital status at the time of the execution of the contract.

The record reveals that appellant was married to Morris from June 10, 1944, to October 30, 1950, from which latter date she was a single woman until she married King on August 14, 1951; that the written partnership contract was entered into on June 10, 1948, without having her disabilities of coverture removed and that all of the funds invested as a result of the contract in the Tule Cattle Company were appellant's separate property. The record further reveals that appellee was a man of experience and had business ability. He had for a long time been employed by appellant's maternal grandfather, J. A. Whittenburg, during his lifetime as an accountant and bookkeeper. After the death of appellant's maternal grandfather in 1936, appellee was employed by appellant's mother, Mrs. Hedgecoke, as a bookkeeper and accountant until her death in 1941, after which he was a cotrustee of the estate of Mrs. Hedgecoke, kept the books and managed her estate consisting of real property, oil interests, a wholesale business, drug store and the operation of a ranch until the fall of 1948. He had been closely associated with appellant's family and was managing the estate of her deceased mother at the time the partnership contract was executed. He had therefore occupied a position of trust with the family of appellant for many years and the relationship of trust still existed with appellant at the time

she signed the partnership contract. But on April 13, 1949, appellant, joined by her then husband E. L. Morris, entered into another written agreement with appellee to liquidate the Tule Cattle Company assets and dissolve the partnership. The agreement provided that no more cattle would be purchased and no more obligations incurred, except to preserve and protect the estate; that the assets should be sold by appellee on or before June 30, 1949, and an accounting of the same rendered to appellant by appellee. Further investigation into the matters of appellant's interest resulted in the filing of this law suit.

We are not here concerned with the signing or execution of an ordinary contract by a married woman. We are here concerned with the legal authority of a married woman to execute a partnership contract for "mercantile or trading purposes" without first having her disabilities of coverture removed as provided for in Article 4626, Vernon's Civil Statutes, and the result of such action. This matter, being governed by statute, has been separately treated by our courts and it must not be confused with the rules governing the result when a married woman signs or executes an ordinary sales or lease contract or a note.

The rule has long been well recognized that a copartner in a mercantile enterprise is a merchant and must possess the elements of competency of a trader. The courts of Texas have for many years held that a wife cannot become a partner in business either with her husband or with another, since the legal difficulties are identical in both instances. Neither can she, joined by her husband, become a partner with a third person. The partnership of a single woman is terminated with her marriage, whether her husband or a third person be the other party. She has by her marriage incapacitated herself to perform the partnership contract. 23 Tex.Jur. 305, Sec. 267, and authorities there cited.

In a partnership relationship each party has mutual rights, duties and liabilities as to the other as well as to third persons. A partnership involves ownership and each partner has a fiduciary relationship with every other partner. A contract

of partnership is, in effect, one of mutual agency, each partner acting as principal on his own behalf and as an agent for his co-partner in the transaction of partnership affairs. Each partner is jointly, and generally severally, liable for contractual obligations assumed and tort liabilities incurred by other partners in the course and within the scope of partnership business. For these and other reasons a partnership contract is not an ordinary contract and it would complicate matters for a married woman to be privileged to enter into a partnership contract with a stranger, even when joined by her husband and when investing her own separate funds therein. The income from the wife's separate property constitutes a part of the community property, although such be invested in an attempted partnership contract by the wife. In Texas the law gives the husband the right and power to manage and control community property, with certain exceptions not applicable here. Yet, in a wife's attempt to create a partnership contract to invest her separate funds, she has sought to give her copartner the right and power to control and manage the income from her separate funds. To permit such to be done would authorize a third person or a stranger to manage and control the income from the wife's separate funds, which is community property under the law subject to the management and control of her husband. If a wife be given the authority to enter into a partnership contract for the investment of her separate funds and give her copartner the sole and exclusive right to manage and control such funds, including the income or increase therefrom, as was attempted to be done under the terms of the partnership contract here under consideration, then the wife, acting jointly with a third person or a stranger, would have the power to circumvent, repeal, revoke and make wholly ineffective that part of our community property law vesting the right and power in the husband to manage and control the community property of himself and his wife.

A party cannot act beyond statutory authority or violate any fundamental policy of community property laws. 41 C.J.S., Husband and Wife, § 496, p. 1060.

The validity of a law cannot be impaired by contract. Neither can the status of community property be changed by agreement to separate property. Gorman v. Gause, Tex. Com.App., 56 S.W.2d 855. In the case of Brown & Co. v. Chancellor, 61 Tex. 437, 445, the court held that the marriage of a woman dissolved a business partnership that previously existed and that during her marriage she did not have the power to enter into a partnership contract with a third person or with him together with her husband.

The same question of law here presented, together with a similar factual situation, existed in the case of Miller v. Marx & Kempner, 65 Tex. 131, 132, when the court said in part:

"This court has heretofore determined that a wife cannot become a partner in business, either with her husband or anyone else. Wallace v. Finberg, 46 Tex. 35; Cox v. Miller, 54 Tex. 16, 25; Brown v. Chancellor, 61 Tex. 437; Green v. Ferguson, 62 Tex. 525.

\* \* \* \* \* \*

"It follows naturally that her separate estate cannot be subjected to any of the debts of such an attempted partnership; and her claim as against the party, or parties, with whom she endeavored to enter into business, would not be that of a partner, but she would doubtless be a creditor to the extent of the separate property she had thus invested."

In the case of Purdom v. Boyd, 82 Tex. 130, 17 S.W. 606, 607, the court said:

"In this state the wife cannot become a partner in a mercantile enterprise, and, if she so invests her separate property, she incurs no liability as a partner, and is entitled, to the extent of the investment so made, to the protection accorded a creditor of the concern. Miller v. Marx, 65 Tex. [131] 132; Smith v. Bailey, 66 Tex. [553], 555, 1 S.W. 627; Middlebrook [Bros.] v. Zapp, 73 Tex. [29] 31, 10 S.W. 732."

In the case of Wright v. State, Tex.Civ. App., 71 S.W.2d 352, 353, Judge Baugh speaking for the Austin Court of Civil Appeals said:

"It is now settled that a married woman cannot enter into a partnership in a mercantile business with her husband or with any one else. Miller v. Marx & Kempner, supra; Middlebrook Bros. v. Zapp, 73 Tex. 29, 10 S.W. 732; Purdom v. Boyd, 82 Tex. [130] 135, 17 S.W. 606. And if her separate estate were invested in the business she merely became a creditor of the firm to that extent, and not a partner."

Even the Texas Court of Criminal Appeals said in the case of Turner v. State, 144 Tex.Cr.R. 359, 163 S.W.2d 205, 206:

"Moreover, as a general rule, a wife cannot enter into a partnership in a mercantile business with her husband or with anyone else. Wright v. State, Tex.Civ.App., 71 S.W.2d 352, and authorities there cited."

The Texas rule is recognized by our Federal courts as expressed in the case of Kasch v. Commissioner of Internal Revenue, 5 Cir., 63 F.2d 466, 468, in the following language:

"For two or more persons to be partners they must expressly or impliedly agree to be associated in a relationship which has the legal effect of making them partners. White v. Mc-Neil (Tex.Civ.App.) 294 S.W. 928; 20 R.C.L. 802. Under the Texas law, a married woman cannot be a partner in a mercantile business, unless her disabilities of coverture are removed by compliance with a statutory requirement. Purdom v. Boyd, 82 Tex. 130, 17 S.W. 606; Miller v. Marx & Kempner, 65 Tex. 131; Rev.St.Tex.1925, art. 4626."

Our Texas courts have consistently adhered to the fundamental principles of law announced in the Miller case, so often subsequently cited. This court recognized the rule of law there announced early this year in the case of Jung v. Dallas Tailor & Laundry Supply Co., Tex.Civ.App., 256 S.W.2d 703.

Article 4626 of our statutes provides a method however by which a married woman can become a legal member of a partnership by first having her disabilities of coverture removed. But until such is done she cannot be a member of a partnership. Dillard v. Smith, 146 Tex. 227, 205 S.W.2d 366.

In the case of J. B. Hirshfeld & Co. v. Evans, 127 Tex. 254, 93 S.W.2d 148, the court said:

"The Legislature having the right to confer sole management, control, and disposition of the wife's separate property on her, had also the right to prescribe the conditions and restrictions, if any, under which that right may be exercised.

"The circumstances under which the wife may become feme sole for mercantile and trading purposes, being prescribed, [Art. 4626] the rule of implied exclusion obtains. Arnold v. Leonard, 114 Tex. 535, at page 540, 273 S.W. 799."

Since "the rule of implied exclusion obtains", the only way a wife may become a feme sole for mercantile and trading purposes is to observe the rules laid down in Article 4626. Such cannot therefore be done by waiver, estoppel, affirmance or ratification. Appellant's contentions pleaded in her first count and established by undisputed facts should have been sustained by the trial court and judgment rendered accordingly.

Appellee cites and relies on authorities that have to do with the signing of an ordinary contract by a married woman such as a sales or lease contract, a note or a similar contract. They cite in support of their contentions the cases of Pitts v. Elser, 87 Tex. 347, 28 S.W. 518; Leake v. Saunders, 126 Tex. 69, 84 S.W.2d 993, and other such cases concerning a different kind of a contract. The rules of law there announced in no way mitigate against the rules of law prevailing in this state requiring a married woman to comply with the provisions of Article 4626 before she can enter into a legal and binding contract of partnership for mercantile and trading purposes.

A distinction is made between the two lines of authority in the case of Garner v. Jones, Tex.Civ.App., 81 S.W.2d 536, which case recognizes with approval the rule of law here relied on by appellant.

Assuming however that the trial court correctly held that appellant "was required" to elect as to whether she would ratify and affirm the partnership contract of date June 10, 1948, or disaffirm the same after she became a feme sole as a result of her divorce from E. L. Morris and that she elected to ratify and affirm the contract, the terms of the said contract, which contains all of the terms of the agreement and it was so found by the trial court, provide that the $50,000 advanced to the Tule Cattle. Company by appellant as a loan for operating purposes shall "be repaid at the termination of the operating agreement, but without interest". It authorized the company to borrow "additional operating funds" and appellee later transferred the sum of $27,896.88 belonging to appellant to the Tule Cattle Company as a loan for operating purposes, which sum has not been repaid to appellant. It should be presumed from the language of the contract that it was intended that this sum, being a loan used as a part of the operating funds of the company, must likewise "be repaid at the termination of the operating agreement, but without interest".

At any rate whatever legal authority, if any, appellant had, joined by her husband E. L. Morris, to execute a partnership contract for trading purposes on June 10, 1948, when she was a married woman without her disabilities of coverture removed, she had the same authority and right, joined by the same husband, E. L. Morris, on April 13, 1949, to revoke and nullify the said partnership contract by executing another agreement in writing with appellee so to do. Such was mutually done by the parties, providing by agreement that no more cattle should be purchased and no more obligations incurred, except such as may be necessary to preserve and protect the company assets, which assets should be liquidated by appellee on or before June 30, 1949, and an accounting made by him to appellant. Such

being true there was no partnership contract existing between the parties to be affirmed or ratified thereafter by appellant when she became a feme sole on October 30, 1950, as a result of her divorce from E. L. Morris. There was then nothing more existing than the matter of establishing liability as to assets involved in a purported partnership contract that had previously existed but at most had been terminated by mutual agreement of the parties themselves. But, if a valid partnership contract did then exist and if appellant did ratify it, according to ample authorities previously herein cited, such was terminated upon appellant's marriage to A. P. King on August 14, 1951, long before appellant filed her amended petition herein on May 14, 1952, upon which she went to trial in the trial court on December 1, 1952, with judgment in this cause thereafter entered on January 3, 1953. In any event, appellant is entitled to judgment for the $50,000 she advanced that was to be repaid to her when the contract terminated. A reasonable construction of the contract requires a return to her when the contract terminated the sum of $27,896.88 loaned to the Company by her for operating purposes. But under the record and authorities cited, it is our opinion that all of her investments should be returned to her as a creditor and not as a partner.

As a result of two motions for rehearing filed by separate firms of lawyers on behalf of appellee and a reply thereto made by appellant, we are reforming the last paragraph of the original opinion making it read as follows: For the reasons stated the judgment of the trial court is reversed and judgment is here rendered for appellant, Garland H. King, as a creditor, against appellee, V. Lee Matney and Tule Cattle Company, jointly and severally, for the total sum of $102,896.88, representing monies advanced by appellant to appellee and the Tule Cattle Company as previously herein stated, together with 6% lawful interest thereon from this date. The motions of appellee for rehearing and to argue orally are otherwise overruled on June 29, 1953. Reversed and rendered.