**ALLIED OIL WORKERS UNION,**
Appellant,

v.

**ETHYL CORPORATION,** Appellee.

No. 20838.

United States Court of Appeals
Fifth Circuit.

Jan. 8, 1965.

R. W. Williams, Jr., Baton Rouge, La., for appellant.

C. W. Phillips, Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, La., for appellee.

Before HUTCHESON and BROWN, Circuit Judges, and CHRISTENBERRY, District Judge.

CHRISTENBERRY, District Judge:

Appellant filed suit in the district court under Section 301 of the Labor Management Relations Act (29 U.S.C.A. § 185) for a declaratory judgment interpreting the right of appellee under the existing collective bargaining agreement to draft its employees for overtime work over their protest, and for an injunction compelling compliance with the agreement by restraining appellee from so drafting. The district court, after a full trial, found that appellant had failed to state a claim upon which relief could be granted and, alternatively, that on the merits of its claim appellant was entitled to no relief. 218 F.Supp. 438.

Appellant, Allied Oil Workers Union (hereinafter called the Union), is the duly recognized bargaining representative of the production, maintenance, shipping, receiving and laboratory employees of appellee, Ethyl Corporation (hereinafter called the Company), at its plant at Baton Rouge, Louisiana.

The Union complains that the Company acted in violation of the provisions of their collective bargaining agreement by compelling employees in the boilermakers, riggers and pipefitters classifications to work overtime, despite their protests and unwillingness to do so; that the Company's conduct adversely affected and weakened the Union's bargaining position and caused dissatisfaction and loss of confidence of the Union's membership in the ability and integrity of the Union; and states that it exhausted all mandatory steps in the grievance procedure provided for by the agreement, including making a request that the company arbitrate the dispute under the permissive arbitration clause of the agreement, which request was refused by the Company.

With respect to arbitration the agreement provides:

"In the event that differences arise between the COMPANY and the UNION as to the meaning of any provision of this agreement, which are not settled through the Grievance Procedure, *such differences may be submitted to arbitration provided the COMPANY and the UNION mutually agree to do so.* * * * *Neither the COMPANY nor the UNION shall be compelled to arbitrate any difference* * * * *"* (Emphasis added.)

The Company asserts here, as it did below, 1) that the effect of the present suit is to force the company into compulsory arbitration, with the district judge as arbitrator, notwithstanding the fact that under the terms of the bargaining agreement neither party may be forced to arbitrate; 2) that self-help is the proper remedy available to the union; and, 3) that in the event the union's claim is properly before the court, the record does not establish that the company had waived its inherent right to compel its employees to work overtime.

Following a trial in the district court, the judge found that "where it is conclusively shown, as it is in this case, that the collective bargaining agreement does not provide for final and binding arbitration, but does provide for grievance procedures, that after the grievance procedures are exhausted, neither party is bound to arbitrate and each must resort to self-help in adjusting their dispute, and that consequently, plaintiff's complaint fails to state a claim upon which relief can be granted by this Court." The district judge felt that the union, in seeking a judicial determination and enforcement of its claimed contractual rights was "attempting to inject a compulsory arbitration provision into the collective bargaining agreement by selecting the Court as arbitrator and thus, forcing an arbitration of the dispute." However, the court added: " * * * (E)ven if it should have been held, or might in the future be held that the union does have a right to

maintain this action, the testimony and the record clearly show, without any doubt whatsoever, that there is simply no provision made in the collective bargaining agreement for either granting to the company or withholding from it the right to draft employees for overtime work."

For the sake of clarity we will treat separately the challenged rulings of the district court regarding 1) the Union's failure to state a claim upon which relief can be granted and 2) the recognition of the Company's right to draft overtime.

1.

■ The effect of the judgment of the district court is to place upon the Union the necessity of resorting to self-help, by strike, work stoppage or otherwise, to settle a dispute involving matters in a collective bargaining agreement,[1] absent a compulsory arbitration provision. From this reasoning it follows logically that Section 301 of the Act would be available as a remedy only in cases where there is a compulsory arbitration provision and only in cases where the parties have previously agreed that the dispute involved is arbitrable. According to this theory, courts could not under the authority of Section 301 entertain suits to determine whether or not certain disputes were under the terms of a bargaining agreeement arbitrable, for this in itself requires an interpretation of the agreement. The unavoidable alternatives would be arbitration or strike. The question would then be, who would need the courts and what would be the purpose of Section 301?

301 (a) provides:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as de-

fined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

Not only does this section confer on the federal district courts jurisdiction over suits for violation of labor agreements, but it creates in each party the substantive right to have these agreements judicially enforced. See: Textile Workers of America v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972. Its purpose is to expand the availability of forums for the enforcement of labor contracts, Charles Dowd Box Co. v. Courtney, 1962, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483, with the ultimate aim of promoting industrial peace, Lincoln Mills, supra.

It is true, and we recognize, that this case is somewhat different from the usual case under Section 301, in that the contract here involved contains only a permissive arbitration clause. Yet it is in a case such as this that we find Section 301 to have its most salutary effect, namely, the avoidance of industrial conflict by providing the parties to an honest dispute over the interpretation of their contract with a peaceful alternative to economic disruption.

■ Judgments declaring the rights and obligations of parties to a collective bargaining agreement may be sought under this section, Black-Clawson Co., Paper Mach. Division v. International Association of Machinists, 1962, 2nd Cir., 313 F.2d 179, and the complaint here does not in our opinion fail to state a claim upon which relief may be granted. The district court need not act as arbitrator,[2]

1. No authority need be cited for the principle that in determining the validity of a motion to dismiss for failure to state a claim pursuant to Rule 12(b), F.R.Civ. P., each well-pleaded fact must be taken as true and construed in a manner most favorable to the plaintiff.

Thus, here, it must be accepted as fact that the subject of the drafting was cov-

ered by the collective bargaining agreement, as alleged.

2. An eminent authority in the field of labor law has expressed it as his opinion that "when actions for breach of the substantive terms of a contract are instituted under Section 301 in the absence of an arbitration clause, the courts should as-

but it must adjudicate issues properly before it under Section 301.

2.

█ At the trial of this matter the only witnesses heard were those of appellant. The Company offered no testimony. The facts are therefore undisputed. Negotiations on the question of overtime drafting, according to the evidence, date back to 1952, at which time a proposal was made for the adoption of an agreement designated as the Ethyl Maintenance Overtime Procedure, which provided in general tenor for voluntary overtime by employees.[3] Although the Company agreed to be bound by the agreement for a 90-day trial period, it refused to sign the agreement thereafter because the agreement did not specifically recognize the Company's right to demand overtime. In 1956 when the current collective bargaining agreement was executed, the previous agreement had never been assented to by the Company nor were its provisions incorporated in the collective bargaining agreement.

The Union takes the position that the failure of the Company to exercise its right to draft overtime from 1952 to 1958, such period overlapping for two years the period covered by the current agreement, amounted to an abandonment by the Company of its prerogative to do so. The Union also points to certain provisions of the agreement as indicating this intention. Yet, it is candidly conceded by the Union that unless the contract either expressly or by reasonable implication or inference forbids the drafting of employees for overtime such right was not yielded by the Company.

We agree with the district judge that the Union failed to sustain its burden of showing that drafting rights were abandoned; and we find it sufficient to say that neither the collective bargaining agreement itself nor the Company's previous conduct indicate an intention on the part of the Company to waive its asserted right. On the contrary, we find it most significant that the Company categorically and consistently refused to sign the Overtime Procedure for the express reason that its drafting right was not recognized.

It is our opinion that appellant's complaint, while not deficient for failure to state a claim, is not supported by the evidence. The judgment of the district court is accordingly amended, and as amended is affirmed.

█

---

sume the arbitrator's responsibility."
Cox, Reflections Upon Labor Arbitration, 72 Harvard Law Review 1482, at 1512.

3. The Overtime Procedure throughout makes reference to overtime *accepted* and *refused* by the covered employees. It refers to the Company *offering* overtime, and sets out the manner in which an employee may refuse overtime, even providing the exact method of computing the amount of overtime accepted and refused.