**Edgar G. DAILEY, Plaintiff-Appellee,**

v.

**TRANSITRON ELECTRONIC CORPORATION, Defendant,**

**and Transitron Overseas Corporation, Defendant-Appellant.**

No. 72–3323

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

March 15, 1973.

---

* Honorable William G. East, Senior United States District Judge, District of Oregon, sitting by designation.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

conduct business in many locations throughout the United States.

Transitron Overseas buys piece parts from other Transitron subsidiaries and transports them into Mexico where they are assembled by Transitron Mexicana. Title to the pieces remains in Transitron Overseas. The assembled goods are then resold to the subsidiary from whom the pieces were originally bought.

Horace C. Hall, III, Carlos M. Zaffirini, Laredo, Tex., for defendant-appellant.

J. G. Hornberger, Lazaro Garza-Gongora, Jr., Laredo, Tex., for plaintiff-appellee.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

WISDOM, Circuit Judge:

In this case an employee sues his former employer for breach of an employment contract. The district court, 349 F.Supp. 797, held that the contract was governed by the laws of Texas and not the laws of Mexico. The sole issue before us on appeal is whether the district court correctly concluded that the laws of Texas were applicable. We affirm.

I.

The plaintiff, Edgar Dailey, is a mechanical engineer and a citizen of the United States. The defendant, Transitron Overseas, is a wholly owned subsidiary of Transitron Electronics. Both are Delaware corporations with their home offices in Massachusetts. Transitron Overseas has a permit to do business in Mexico. Transitron Mexicana, S.A., is organized under the laws of Mexico and is located in Nuevo Laredo, Mexico, immediately across the border from Laredo, Texas. Of the forty-seven thousand shares outstanding of Transitron Mexicana, S.A., six shares are owned by individuals and the rest are owned by Transitron Electronics. Other subsidiaries of Transitron Electronics

II.

While the plaintiff was residing in California, he was visited by Mr. James Von Horz, vice-president of Transitron, who asked if the plaintiff had an interest in being employed by the defendant. Initially they discussed transferring the plaintiff to Kansas City or Mineral Wells. After further negotiations they orally agreed that the plaintiff would become director of engineering of the Mexican subsidiary. In January and February 1969, the plaintiff travelled to Laredo, Texas, to establish residence and take his pre-employment physical. The plaintiff received a written offer of employment dated February 3, 1969, on Transitron Mexicana stationery, from John Zimmerman, the manager of the Nuevo Laredo plant, and an employee of the Transitron Overseas Corporation. During the month of February 1969 the plaintiff started to work for the defendant corporation but continued to maintain his residence in Laredo, Texas. April 17, 1969, a contract of employment between the plaintiff and the Transitron Overseas Corporation was signed in Nuevo Laredo for three years service. The form of contract was prepared by an employee of the defendant who copied it from a form used by Transitron Electronics Corporation. The plaintiff moved to Nuevo Laredo in July or August 1970 and was discharged by the defendant a short time afterwards in September 1970.

The defendant employer paid the plaintiff by checks drawn on a United States bank, deducting United States so-

cial security and withholding taxes from his paycheck. Transitron Electronics Corporation paid unemployment compensation taxes on his wages. When discharged he applied for and received benefits with the Texas Employment Commission in Laredo, Texas. He has never received any benefits whatsoever under Mexican law, was never paid by Transitron Mexicana, S.A., and was not eligible for social security benefits in Mexico. He has never filed a Mexican income tax return but has paid all income taxes in the United States.

### III.

■ In a diversity suit, a federal district court must apply the conflicts rules of the forum state. Klaxon Company v. Stentor, 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. Texas, the forum state here, follows the traditional rule of applying the law of the place of performance or the law of the place where the contract was made, in the absence of a contrary manifestation of intent by the parties. Austin Building Co. v. National Union Fire Ins. Co., Tex. Sup.Ct.1968, 432 S.W.2d 697. This traditional rule is not conclusive but is presumptively applied if the parties' intent is not determinable. Thus, before deciding where a contract was made or where it was to be performed, we look to the parties' intent. Here, that second step is not reached because of the overwhelming relationship of the parties to Texas and the United States. *See* Res. of Conflicts 2d, §§ 6, 188, 196; Leflar, American Conflicts Law, § 103 False Conflicts (1968).

The plaintiff is a citizen of the United States and the defendant is a Delaware Corporation. The plaintiff contracted with the Delaware corporation and not with the Mexican corporation. In every respect he was treated as an employee of the Delaware corporation and subject to the rights and liabilities of an employee within the United States. In no way was he treated as a Mexican employee. The Mexican plant at which he worked was, but for six nominal shares, owned wholly by the Delaware parent corporation. *Cf.* Hellenic Lines v. Rhoditis, 1970, 398 U.S. 306, 90 S.Ct. 1731, 26 L. Ed.2d 252. All the parties with whom he negotiated were employees of the parent corporation or one of its subsidiaries within the United States, though some were also employed by the Mexican corporation. What is more, the contract was to be partially performed in Texas.

■■ A second significant route to determining intent is the presumption that the parties intended to make a legally binding agreement. Teas v. Kimball, 5 Cir. 1958, 257 F.2d 817, 823; Texas Gas Utilities Co. v. Barrett, Tex. Sup.Ct.1970, 460 S.W.2d 409; Grace v. Orkin, Tex.Civ.App.1953, 255 S.W.2d 279. Article 40 of the Mexican New Federal Labor Code limits the duration of employment contracts to one year. Here, the contract was for three years and was enforceable in Texas since the writing satisfied the statute of frauds. Texas Business and Commerce Code, § 26.01 V.T.C.A.; Vernon's Texas Civil Statutes Art. 3995, 26 Tex.Jur.2d 242 (Statute of Frauds § 89). Furthermore the statute of limitations in Mexico for breach of employment contract is two months, a period which the plaintiff failed to satisfy. That limitation period has been held to be substantive and not procedural. Gillies v. Aeronaves de Mexico, S.A., 5 Cir. 1972, 468 F.2d 281. In the district court below the jury found for the plaintiff and awarded him $34,579.99 for the employer's breach.

We conclude that the intent of the parties was to be bound by the law of Texas. We need not reach any further questions of Texas conflicts rules.

Affirmed.