**MOBIL OIL CORPORATION et al., Plaintiffs-Appellees,**

v.

**OIL, CHEMICAL AND ATOMIC WORKERS INTERNATIONAL UNION, AFL-CIO, et al., Defendants-Appellants.**

**No. 72-3272.**

United States Court of Appeals, Fifth Circuit.

Aug. 10, 1973.

Rehearing En Banc Granted Dec. 3, 1973.

604

Chris Dixie, Houston, Tex., for defendants-appellants.

James W. Hambright, John G. Tucker, Beaumont, Tex., Warren H. Greene, Jr., New York City, for plaintiffs-appellees.

Before THORNBERRY, AINSWORTH and RONEY, Circuit Judges.

AINSWORTH, Circuit Judge:

This suit was brought by Mobil Oil Corporation Marine Transportation De-

partment, Gulf-East Coast Operations [Employer] against the Oil, Chemical and Atomic Workers International Union AFL-CIO and Maritime Local No. 8–801 of that Union [Union] for a declaratory judgment under section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), (c) and 28 U.S.C. § 2201. It concerns the validity of an agency shop clause contained in a collective bargaining agreement between Employer and Union, which clause is in apparent conflict with Texas right-to-work laws.[1] The district court held that the Texas laws should take precedence, and rendered a declaratory judgment in favor of Employer, holding the agency shop clause void and unenforceable.

Union appeals, presenting a number of issues which we summarize as follows:

1) that this is an exceptional case where the N.L.R.B. should have primary jurisdiction and preempt judicial proceedings because the employees are seamen who work exclusively aboard deep sea tankers engaged in coastwise commerce and some foreign commerce. Alternatively, that in the exercise of sound discretion the court should have declined to render a declaratory judgment;

2) that the district court erred in applying Texas right-to-work statutes to all its covered employees; and

3) that there is no case or controversy and the dispute was not ripe for declaratory judgment.

We hold that a controversy existed, that jurisdiction properly vested in the district court, and that there was no abuse by that court in declining to defer to N.L.R.B. jurisdiction. We further hold that the agency shop clause is valid and enforceable with respect to all employees covered by the collective bargaining agreement.

Sections 7 and 8(a)(3) [29 U.S.C. §§ 157, 158(a)(3)] of the Labor Management Relations Act specifically authorize a union shop, wherein employment is contingent on membership in a union.[2]

---

1. Vernon's Ann.Civ.St. Art. 5154g, Section 1:

> "It is hereby declared to be the public policy of the State of Texas that the right of persons to work shall not be denied or abridged on account of membership or nonmembership in any labor union or labor organization and that in the exercise of such rights all persons shall be free from threats, force, intimidation or coercion."

Vernon's Ann.Civ.St. Art. 5207a, Section 2:

> "No person shall be denied employment on account of membership or nonmembership in a labor union."

Vernon's Ann.Civ.St. Art. 5154a, Section 8a:

> "It shall be unlawful for any labor union, any labor organizer, any officer, any agent or representative or any member of any labor union to collect, receive or demand, directly or indirectly, any fee, assessment, or sum of money whatsoever, as a work permit or as a condition for the privilege to work from any person not a member of the union; provided, however, this shall not prevent the collection of initiation fees as above stated."

2. 29 U.S.C. § 157:

> "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title."

29 U.S.C. § 158:

> "(a) It shall be an unfair labor practice for an employer—
>
> . . . . . .
>
> (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: *Provided,* That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in this subsection as an unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later . . . ."

These sections have been interpreted to authorize an agency shop, which is a union security agreement conditioning employment, in lieu of actual union membership, on the payment of regular union dues and initiation fees. N.L.R.B. v. General Motors Corporation, 373 U.S. 734, 738–739, 83 S.Ct. 1453, 1457, 10 L. Ed.2d 670 (1963); Retail Clerks Inter. Ass'n v. Schermerhorn, 373 U.S. 746, 751–752, 83 S.Ct. 1461, 1464–1465, 10 L. Ed.2d 678 (1963).

The agency shop clause involved here states:

"For the duration of the Agreement all employees hired shall, as a condition of employment, become members of the Union and/or in the alternative pay the regular union dues and initiation fees within 31 days from the employment date."

Despite the provisos in sections 7 and 8(a)(3), recognizing the validity of union security agreements, section 14(b) of the Taft-Hartley Act [29 U.S.C. § 164(b)] provides that such agreements must give way to state law where the state prohibits the conditioning of employment upon union membership.[3] Such a prohibition is expressed in Texas' right-to-work laws and it is conceded that these Texas statutes bar an agency shop clause.[4]

Mobil Oil Corporation is a New York corporation. Employer is a division of Mobil's Marine Transportation Department and has its headquarters in Beaumont, Texas. Prior to 1962 the headquarters were in New York. It operates eight oceangoing tankers, which ply the waters of the East and Gulf Coasts of the United States, principally between the State of Texas and the State of New York. It employs unlicensed seamen from various states. Of a total of 289 employees, 123 have reported that Texas is their state of residence. Further, a total of 152 out of 289 have requested Employer to list Beaumont, Texas, as their shipping port.[5] All of the work performed by the seamen here is aboard ships and the men have no shore duties. They are usually paid in cash, generally at a northern port such as New York or Providence. At the Beaumont, Texas, headquarters payroll records are kept and various bookkeeping functions are performed including the withholding of federal income and FICA taxes and collection of union dues. Unemployment taxes are paid only to the State of Texas. Of the hiring of employees, 60 per cent occurs in Beaumont and 40 per cent at New York.

Union is the exclusive collective bargaining representative of the unlicensed seamen employed on Employer's tankers. The collective bargaining agreement, the subject of this controversy, was negotiated and executed in the State of New York. It was prepared in final form and retyped in Texas. Since 1942, a year after Union's certification to Mobil, labor contracts for the employee unit involved have been negotiated in New York. Present negotiations for a successor contract have been taking place in New York.

The district judge found that a more substantial part of the administration of the collective bargaining agreement occurred in Texas than in any other state, and held that the enforcement or attempted enforcement by the Union of the agency shop clause directly involves the Company's Texas employees, as well as activities and administration of the agreement in Texas, in contravention of the Texas right-to-work laws. He there-

3. 29 U.S.C. § 164:

"(b) Nothing in this subchapter shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial Law."

4. The Texas Attorney General has so ruled in his Opinion No. WW–1018.

5. There are 60 employees residing in New York, 21 in New Jersey, 16 in Florida, 13 in Louisiana, 10 in Maine, 10 in Rhode Island, and 36 other employees in 16 other states or territories.

fore declared the clause to be void and unenforceable.

### THE PREEMPTION ISSUE

█ Union concedes that generally N.L.R.B. preemption will not prevail in a section 301 suit, but contends that in exceptional cases, such as this involving extraterritorial problems, the district court should have declined jurisdiction. We disagree.

While section 301 of the Labor Management Relations Act is applicable to suits for violation of contracts,[6] this section has been broadly construed to encompass suits invoking the judicial process for determination of the validity of a collective bargaining agreement, El Paso Bldg. & Const. Tr. Coun. v. El Paso Chap. Assoc. Gen. Con., 5 Cir., 1967, 376 F.2d 797, as well as suits seeking a declaration of various rights and obligations of parties to such contracts, Allied Oil Workers Union v. Ethyl Corporation, 5 Cir., 1965, 341 F.2d 47. The Supreme Court has approved the deliberate choice of Congress to leave the enforcement of collective agreements "to the usual processes of the law." Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 513, 82 S.Ct. 519, 526, 7 L.Ed.2d 483 (1962). We observe no exceptional circumstances here which justify N.L.R.B. preemption of a proceeding clearly within the contemplation of section 301.

### THE CASE OR CONTROVERSY ISSUE

Nor do we agree with appellants that the dispute has not ripened to a present case or controversy. On April 23, 1970, five months subsequent to the execution of the present collective bargaining agreement, Employer wrote to Union stating that the agency shop clause of the contract "is invalid under Texas law" and evidencing Employer's intention to require new employees to sign a certificate which would advise them that union membership would be on a purely voluntary basis. The policy was effectuated and new employees were so advised. Union made no response to Employer's letter. In July 1971, however, Union in a newsletter to its members wrote that

> "As far as this Union is concerned any employee in our division of Mobil will either join our Union or pay dues to the Union. We intend to exercise our right to have the employment of any unlicensed seaman terminated who does not join or pay dues to the Union. We hope this answers all questions regarding this point."

Employer obtained a copy of the newsletter and shortly thereafter filed this complaint to declare the agency clause invalid.

█ Whether a case or controversy is presented must be determined on a case-by-case basis.

> "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

6. 29 U.S.C. § 185:
 "(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

 . . . . .

 "(c) For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members."

■ Applying these principles to this case, we have no difficulty concluding that a substantial controversy involving diametrically opposed interests between Union and Employer existed. Union intended to enforce its agency shop policy; Employer, on the other hand, intended to abolish it, and each party was aware of the intentions of the other. The complaint was, therefore, not premature.

## THE VALIDITY OF THE AGENCY SHOP CLAUSE

This is a case of first impression. We have found no direct authority bearing on the issue involved. Employer contends in essence that the law of Texas is predominant because it is in the locale of Employer's headquarters, the state in which (compared to the other states) the greater number of significant transactions and contacts occur, and the state in which a more substantial part of the administration and performance of the collective bargaining agreement occurs. Union contends that the situs of the employees' work, the high seas, is determinative, and that Texas state law is therefore inapplicable. Reliance is placed on Western Electric Co., Inc., 84 N.L.R.B. No. 111 (1949) and Northland Greyhound Lines, Incorporated, 80 N.L.R.B. No. 60 (1949), in support of Union's contention.

In *Western Electric*, the Union (Communication Workers of America, CIO, Installation Division # 6) petitioned for a union-shop election. The Board was called upon to determine an appropriate unit of mobile telephone installation employees who performed their work in the District of Columbia and 45 states, some of which prohibited union security. The

Board determined the appropriate unit to include only members of the contract unit subject to state laws which did not prohibit the union shop. In deciding the applicable state law by which the members would be governed, the Board used as a criterion the headquarters of the individual workers, and relied on its prior decision in Northland Greyhound Lines, Inc., 80 N.L.R.B. No. 60 (1949). In *Northland Greyhound*, the Board held that "headquarters" are "where the employees report to work, receive their instructions, and are paid their salaries." The Board in *Western* held that the headquarters of the installation employees appeared "to be at their job site, as that is where they report for work, receive their instructions, and are paid their wages." Accordingly, the Board considered each employee "to be subject to the law of the State in which his job site is located," and excluded "all employees whose job sites are located in States which prohibit union-shop agreements" from the unit.

Union contends that *Western Electric* recognizes employee job situs as the test for deciding the law applicable to an agency shop clause in a collective bargaining agreement. Employer contends that *Western Electric* and *Northland Greyhound* do not bind this Court and distinguishes them on their facts, pointing out that neither the hiring or firing nor the managerial activity or other incidents of employment occurred in one state alone, as in the present case. Employer further contends that if any rule can be gleaned from these cases it is a rule establishing "headquarters" of employees as the proper criterion as opposed to "job situs" but that in either event the State of Texas meets both criteria.[7] In *Western Electric* and

---

7. Employer contends that if Board action is to be accorded any weight, a recent decision by a Board Trial Examiner supports its contention that a state's right-to-work laws should apply to seafaring employees shipping through a port in that state, citing Seafarers Int. Union of No. America, Case No. 23–CB–1222 (N.L.R.B. March 30, 1972), an unfair la-

bor practice case. Subsequent to the decision of the Trial Examiner (now Administrative Law Judge), the National Labor Relations Board, in reviewing that decision, expressly refused to pass on the Administrative Law Judge's findings and conclusions with respect to the application of the Texas right-to-work law. The Board said: "The Administrative

*Northland Greyhound* the Board apparently believed that "headquarters" and "job situs" were more or less equivalent under the facts of those cases. The matter before us presents a more complex question. Unlike the cited Board cases, in which headquarters coincided with jobsites in various states, in this case we have only one headquarters, in Texas, with job situs not in individual states but on the high seas.

In the cited N.L.R.B. cases, the Board solved the problem by recommending separate units which would be subject to the laws of the respective states in which the employees were headquartered, that is, the state in which most of their employment contacts occurred, the state in which they were working. In the present case, the operation being sea-based, with work performance occurring on the high seas, we are unable to reach a solution as simple as that employed by the Board.

 Conceding, arguendo, that the district court correctly found that a more substantial part of the administration and performance of the collective bargaining agreement occurs in the State of Texas than in any other state, such a finding is not decisive of the issues in this case. In making such a finding the district judge took into consideration various facts associated with Texas, and acts occurring therein, thereby weighing the interests of Texas

against other states. In so doing the court failed to give proper consideration to the most important factor in the case, that is, the situs of the work performance of the covered employees. The trial judge, in written factual findings, held in this regard that

"Substantially all of the employees' work time is spent aboard Plaintiff's tankers, and such vessels are located on the high seas or in ports other than ports located in the State of Texas approximately 80% to 90% of the time, but at any given point in time one of the vessels generally is located in Texas or Texas waters." [8]

Use of Employers' headquarters as the decisive criterion in this case would allow an employer to make an arbitrary choice, and could produce bizarre consequences. Headquarters could be shifted about by large national companies to states with favorable labor laws, such as the right-to-work statutes. The purpose of sections 7 and 8 of the Labor Management Relations Act or of section 14(b) of the Taft-Hartley Act, the applicable statutes here, could easily be defeated. Under the facts of this case the job situs of the employees is the most important and logical factor. As the Union has pointed out to us, Mobil's top headquarters is in New York, and prior to 1962 its Marine Transportation Department was likewise headquartered in New York. Thus, as the Union states,

Law Judge based his finding that Respondent violated Section 8(b)(1)(A) and (2) of the Act on the effect of Texas' right-to-work law on Charging Party James Moyles' obligation to pay dues. While we agree that Respondent violated . . . the Act, we do so only for the reasons enumerated herein." Seafarers International Union of North America, Atlantic, Gulf, Lakes & Inland Waters District, et al., 202 N.L.R.B. No. 91.

8. Union points out in its brief, extracting information from vessel logs, that the vessels making typical trips touching the port of Beaumont, for example, the MOBIL ARROW, the MOBIL ECLIPSE, the MOBIL FUEL, and the MOBIL GAS, for a period of time in May and

June 1972 were in the port of Beaumont only 5.5 per cent of the total time involved. Adding to this example the time of the MOBIL LUBE in May, June and part of July 1972, during which time the vessel did not touch Beaumont at all, our own rough calculation shows that time in the port of Beaumont was a mere 4 per cent of the total time involved.

Many of the trips do not even touch a Texas port. For example, eight times a year a vessel makes a trip from the East Coast to Puerto Rico and return. The MOBIL LUBE, referred to above, was at the time of trial en route to Guam on a 6-month charter, and had not been in a Texas port for 50 days, yet the members of that crew were also covered by the labor agreement.

the change in headquarters from New York to Beaumont did not substantially change the working location of the men which remained the same.

 Through the collective bargaining agreement, the parties thereto agreed to an agency shop clause. This type of membership is authorized by sections 7 and 8 of the Labor Management Relations Act unless forbidden by state law applicable to these circumstances. The location of Employer's headquarters and predominance of Texas contacts over any other state do not mandate a conclusion that the employees are Texas employees. State right-to-work laws are applicable only to employees of that particular state. The employees involved here are not for the purpose of their collective bargaining agreement employees of Texas or any other state— they are mobile, maritime employees, whose principal place of employment, or jobsite, is on the high seas.

The district court was called upon to determine the validity of a portion of the collective bargaining agreement, the agency shop clause. Our sole duty is to decide whether that determination was erroneous. We cannot rewrite the contract; that is the prerogative of the parties to the agreement through the negotiating machinery by which they are bound. Nor can we compel concessions or otherwise impose our views of a desirable settlement. N. L. R. B. v. Insurance Agents' International Union, 361 U.S. 477, 487, 80 S.Ct. 419, 426, 4 L.Ed. 2d 454 (1970); National Labor Relations Board v. American Nat. Ins. Co., 343 U.S. 395, 404, 72 S.Ct. 824, 829, 96 L.Ed. 1027 (1952); M. R. & R. Trucking Company v. N. L. R. B., 5 Cir., 1970, 434 F.2d 689, 695. *See also* H. K. Porter Co., Inc. v. N. L. R. B., 397 U.S. 99, 90 S.Ct. 821, 25 L.Ed.2d 146 (1970).

 When the parties to the collective bargaining agreement freely chose to be covered by an agency shop clause

we must infer that they intended to be bound by their contract. They "cannot be presumed to have contemplated a law which would defeat their engagements." Pritchard v. Norton, 106 U.S. 124, 137, 1 S.Ct. 102, 112, 27 L.Ed. 104 (1882).[9] If there is to be a change, it must be the result of further negotiations.

Reversed.

THORNBERRY, Circuit Judge (dissenting):

I concur in the majority's decision on all issues except the last one, the validity of the agency shop clause; I would hold that the district court properly applied Texas law and declared the clause invalid.

In terms of the language of § 14(b) of the Taft-Hartley Act[1] the issue is whether the collective bargaining agreement between the employer and the union applies to "employment in any state" whose right-to-work laws would invalidate the agency shop clause, i. e. whether the agreement applies to "employment in" Texas. As the majority opinion points out, the problem of deciding where the "employment" is located when the situs of the work performed is not the same as the location of the employer's headquarters or the place where the employees are hired and fired is one which we encounter here for the first time. The majority apparently accepts the district court's approach to the problem, which entails examining and weighing the various contacts of the employer and its employees with the state whose laws are said to apply, but it disagrees with the district court's conclusion that the employment contacts with Texas were sufficient to warrant considering the employment to be "in" that state. Reversal is predicated primarily on the conclusion that "[u]nder the facts of this case the job situs of the employees is the most important and logical factor."

I, too, accept the district court's significant-contacts approach, but would

9. *See also* Dailey v. Transitron Electronic Corp., 5 Cir., 1973, 475 F.2d 12; Teas v. Kimball, 5 Cir., 1958, 257 F.2d 817, 823.

1. § 14(b) is quoted in note 3 to the majority opinion.

hold the district court properly concluded under it that the collective agreement in this case applied to "employment in" Texas. Beyond noting the location of the employer's headquarters in Texas, the district court found that the employer "employs, or approves the employment of, all unlicensed seamen at its headquarters in Beaumont, Texas." Pay records are maintained in Texas and funds are placed on board the ships at Texas ports for disbursements to the employees. All final hiring decisions are made in Texas, and unemployment taxes are paid to the State of Texas. Finally, a majority of the employees list Beaumont as their shipping port, and almost half reside in Texas. These contacts with Texas seem to me more than sufficient to give that State a strong interest in applying its laws to the collective agreement between the employer and the union and to warrant considering the employment to be "in" Texas within the meaning of § 14(b).

The majority argues that if location of the employer's headquarters were regarded as the decisive criterion, employers might choose headquarters locations in states with right-to-work laws and thereby defeat national labor policy. In response, it should be pointed out initially that the district court did not designate the location of the employer's headquarters as the decisive factor, but considered the full range of employer and employee contacts with Texas. More basically, an employer's choice of a location for its headquarters to obtain the benefit of local right-to-work laws would not contravene national labor policy. Section 14(b) of the Taft-Hartley Act expressly permits states to enact and apply right-to-work laws, and it certainly implies no limitation on employer's freedom to choose to locate in any of the various states. The effect of the majority's opinion is to carve out collective bargaining contracts between maritime employers and employees as a special class, not subject to state laws in the same way that, for example, collective contracts between an interstate trucking

or busing business with its employees would be. The majority's emphasis on the geographical situs of work performed outside the state's boundaries seems to me to unduly discount other substantial aspects of the employment relationship, and I do not discern a basis in the statute or in national labor policy for the maritime exemption which the majority establishes.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, RONEY and GEE, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

It is ordered that the cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.