**SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, LOCAL # 433, Plaintiff,**

v.

**CARRIER VIBRATING EQUIPMENT, INC., Defendant.**

Civ. A. No. 85–0777–L(J).

United States District Court,
W.D. Kentucky,
Louisville Division.

Feb. 22, 1986.

Irwin H. Cutler, Jr., Linda J. Wallbaum, Segal, Sales, Isenberg, Stewart and Cutler, Louisville, Ky., for plaintiff.

James E. Milliman, Richard S. Cleary, Louisville, Ky., for defendant.

## MEMORANDUM OPINION

JOHNSTONE, Chief Judge.

This matter is before the court on the defendant's motion to dismiss pursuant to Rule 12(b)(1) & (6) of the Federal Rules of Civil Procedure. Plaintiff Sheet Metal Workers' International Association Local #433 ("Union") brings its claim pursuant to § 301 of the Labor Management Relations Act ("Act"), 29 U.S.C. § 185, and alleges that defendant Carrier Vibrating Equipment, Inc. ("Carrier"), has violated the parties' collective bargaining agreement by arbitrarily and capriciously terminating a Letter of Understanding. The Letter of Understanding allowed Union Stewards to handle employee grievances on company time with no loss of wages. In addition to declaratory judgment and injunctive relief, remedies that may have been rendered moot by a new collective bargaining agreement, the Union seeks payment of any wages lost by union stewards who engaged in grievance activities. Carrier argues that the court·has no jurisdiction under § 301 of the Act and further argues that the Union has failed to state a claim upon which relief can be granted.

## FACTS

The Union and Carrier are parties to a collective bargaining agreement effective January 27, 1983, to January 26, 1986 ("1983 Agreement"). Carrier's predecessor, Rexnord, Inc. ("Rexnord"), and the Union were parties to an earlier collective bargaining agreement effective January 27, 1980, to January 26, 1983 ("1980 Agreement"). Article VI of the 1980 Agreement established the following policy on compensation of employees involved in grievance activities:

> When a Steward is required to leave his work station at the request of the Company, he shall be compensated by the Company for any time lost, at his regular hourly rate of pay.

During negotiations for the 1983 Agreement, the Article VI was amended to end compensation of Stewards for grievance work on company time:

> When Union Stewards leave their work areas to handle grievances, or to attend grievance meetings at any Step of the contractual grievance procedure, or otherwise attend to Union business, they shall record, by use of a time clock or in such other way as the Company may designate, the time they leave and the time they return to their work stations, and they will not be compensated for time away from their work areas.

In a Letter of Understanding dated March 31, 1983, two months after the effective date of the 1983 Agreement, Rexnord agreed to suspend the amendment and resume compensation for grievance work on the following condition: ·

> [I]f at any time during the term of the new contract, the Company finds that grievance activity is excessive, the Company will put into effect the suspended provisions of Article VI. It is further understood and agreed that the Company's decision in this regard is a matter within its sole discretion, and its decision

to implement the new provisions of Article VI will not be subject to the grievance and arbitration procedure of the contract.

Upon purchasing Rexnord, Carrier and the Union entered into a Supplemental Agreement, dated August 12, 1983, in which Carrier agreed to assume and be bound by the 1983 Agreement for the remainder of its term (except as to certain provisions of no interest in this litigation).

On May 10, 1985, Carrier elected to put the suspended provisions of Article VI into effect and stopped compensating Union Stewards for grievance activities. The Union filed an unfair labor practice charge with the National Labor Relations Board. When the Board would not issue a complaint, the Union filed the instant action alleging that Carrier had wrongfully terminated the Letter of Understanding.

## JURISDICTION

Section 301 of the Act vests the district courts with jurisdiction over "suits for violation of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185(a) & (c). The disputed Letter of Understanding, as an amendment to the parties' 1983 collective bargaining agreement, is part of a contract over which the court has jurisdiction.

Carrier argues that the Court's role under § 301 is limited to determining whether the 1983 Agreement obligates the parties to arbitrate their dispute. The court agrees that in suits brought to compel arbitration, its role is limited to determining whether the parties' labor contract requires them to arbitrate. *Chambers v. Beaunit Corp.*, 404 F.2d 128, 131 (6th Cir. 1968); *see also United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). In the instant case, however, the Union has not brought suit to compel arbitration, for it waived arbitration under the terms of the Letter of Understanding. Carrier argues that the Union's waiver of arbitration constitutes a waiver of judicial review as well. The court disagrees. The Letter of Agree-

ment forecloses arbitration, but does not address judicial review. Section 301 designates the court as the appropriate forum for resolving disputes arising under a collective bargaining agreement. Although the court generally will not accept jurisdiction of a dispute until the parties have exhausted the remedies afforded by their labor contract, *see National Treasury Emp. Union v. Kurtz*, 636 F.2d 411 (D.C. Cir.1980), the court is not deprived of jurisdiction simply because the parties have no remedies to exhaust. Arbitration is not a condition precedent to the jurisdiction of a federal district court in all cases under § 301. *Bath Marine Draftsmen's Ass'n v. Bath Iron Works Corp.*, 266 F.Supp. 710, 713–14 (S.D.Me.1967) (citations omitted), *modified*, 393 F.2d 407 (1st Cir.1968); *cf., Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984) (no provision requiring arbitration; consequently, no bar to judicial enforcement of agreement). Absent clear evidence of the Union's intent to forego judicial review as well as arbitration, the court will not deny jurisdiction of the Union's claim.

## FAILURE TO STATE A CLAIM

For purposes of Carrier's motion to dismiss the Union's complaint for failure to state a claim, the complaint will be construed in the light most favorable to the Union and its allegations will be accepted as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976). The Union alleges that the Letter of Understanding was to be terminated only if grievance activities became excessive. The Union further alleges that only two grievances—not an excessive number—had been processed at the time of termination. Although the Letter of Understanding states that Carrier's decision to put Article VI into effect is "a matter within its sole discretion," the Union argues that Carrier acted arbitrarily and capriciously in putting Article VI into effect on the basis of only two grievances.

Carrier cites *Tymshare, Inc. v. Covell*, 727 F.2d 1145 (D.C.Cir.1984), as authority for its contention that it alone may determine what constitutes excessive grievance activity. In *Tymshare*, a written sales plan provided that "management reserves the right to change the quota plan and reserve payments [thereby affecting a salesperson's quota and reserve compensation] at any time during the quota year within their sole discretion." *Id.* at 1148. Although the court held that "their sole discretion" entitled management to determine the existence or non-existence of certain factors that would justify alteration of the sales quota, the court went on to comment that "the language need not (and therefore can not reasonably) be read to confer discretion to reduce the quota *for any reason whatever.*" *Id.* at 1154 (emphasis added). Likewise, the language of the Letter of Understanding, read in the light most favorable to the Union, may allow Carrier to revive the suspended provisions of Article VI when grievance activities become excessive, but that language does not necessarily allow Carrier to declare grievance activities excessive for any reason whatever. Accordingly, the Union is entitled to proceed with its action and may challenge the basis on which Carrier exercised its discretion under the Letter of Understanding.

The court, noting that 12(b)(6) motions are rarely granted even when a court doubts the plaintiff can prevail in its action, finds that the Union has stated a claim and denies Carrier's motion to dismiss. An appropriate order shall accompany this Memorandum Opinion.